UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, | )<br>)<br>) |
| Plaintiff/Counter-Defendant, | )<br>) No. 15 C 11086 |
| v. | )<br>) Judge Sara L. Ellis |
| A TEC AMBULANCE, INC, MICHELLE RHODY, MICHAEL BACHTA, AND DONNA LENZI AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF GLEN LENZI, DECEASED, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants/Counter-Plaintiffs. | ) |

## OPINION AND ORDER

While Defendants/Counter-Plaintiffs Michelle Rhody and Michael Bachta were moving Glen Lenzi ("Glen") on a stretcher to an ambulance for Defendant/Counter-Plaintiff A Tec Ambulance ("A-Tec"), Glen fell from the stretcher and later died. A-Tec's insurer, Plaintiff/Counter-Defendant Homeland Insurance Company of New York ("Homeland"), seeks a declaratory judgment that it has no duty to defend or indemnify A-Tec, Rhody, or Bachta in a lawsuit by Glen's wife, Defendant/Counter-Plaintiff Donna Lenzi ("Donna"). Defendants/ Counter-Plaintiffs seek a declaration that Homeland has such a duty. The parties have cross-moved for summary judgment. Because an exclusion in A-Tec's insurance policy excludes coverage for injuries arising out of the loading of an ambulance and because Donna's underlying lawsuit alleges that Glen's injuries arise out of the loading of the ambulance and other interrelated causes, Homeland has no duty to defend or indemnify, and the Court grants Homeland's motion for summary judgment [41] and denies Defendants/Counter-Plaintiffs' cross-motion [50].

**BACKGROUND**[1]

On January 28, 2015, Rhody and Bachta transported Glen to an A-Tec ambulance to take him to a dialysis appointment. During the transport, Glen fell, and he later died. Before Glen died, his lawyer contacted A-Tec. A-Tec then contacted its insurer, Homeland. Homeland investigated and discovered that while Rhody and Bachta were taking Glen on a stretcher to the ambulance, he fell from the stretcher and hit his head. Rhody and Bachta then gathered Glen and took him to his appointment. He later developed a brain hemorrhage.

Glen died from the hemorrhage, and Donna sued A-Tec in Illinois state court, later amending her allegations to add Rhody and Bachta as defendants. In her fourth amended complaint, Donna alleges that after Rhody and Bachta put Glen on the stretcher, he fell off on the way to the ambulance and hit his head. She also alleges that Rhody and Bachta failed to properly examine and treat Glen and failed to inform medical workers at the dialysis appointment that Glen had fallen. Donna alleges Rhody and Bachta failed to follow safety protocols and violated A-Tec policies and procedures, making them liable for medical negligence.

A-Tec's insurance policy (the "Policy") with Homeland provides coverage for Professional Services Wrongful Acts, which are defined as "any actual or alleged act, error or omission, or series . . . by an Insured in rendering, or failing to render, Professional Services" or "any actual or alleged act, error or omission, or series . . . by any person other than an Insured in rendering, or failing to render, Medical Services, but only for an Insured's vicarious liability with regard to such Medical Services." Doc. 44-1 ¶ LL(1)–(2). The Policy has exclusions of

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Material Facts. The Court has included in this background section only those portions of the statements that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. All facts are taken in the light most favorable to the non-movant in the cross-motion for summary judgment being considered. *Shiner v. Turnoy*, 29 F. Supp. 3d 1156, 1160 (N.D. Ill. 2014).

coverage. The Policy "does not apply to, and [Homeland] will not pay Loss or Defense Expenses, for any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:"

> Bodily Injury or Property Damage arising out of the ownership, maintenance, use, operation or entrustment to others of any aircraft, Auto or watercraft or the loading or unloading thereof; except this Exclusion (D)(5) will not apply to any Claim for a Professional Services Wrongful Act in connection with the loading or unloading of any Patient from any aircraft or Auto[.]

*Id.* § III Exclusion (D)(5). But Homeland and A-Tec agreed to an endorsement that amended Exclusion (D)(5) to remove the exception for loading or unloading of patients so that the exclusion that actually applies reads as follows:

> Bodily Injury or Property Damage arising out of the ownership, maintenance, use, operation or entrustment to others of any aircraft, Auto or watercraft or the loading or unloading thereof. For purposes of this Exclusion (D)(5), "loading or unloading" includes, but is not limited to, the Insured's handling or placement of any individual into, onto or from any such aircraft, Auto or watercraft[.]

*Id.* Endorsement No. 9.

A-Tec tendered the defense of Glen's fall to Homeland. In response, Homeland filed this declaratory judgment action and repeatedly denied coverage.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material

3

fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). After addressing the initial motion for summary judgment, then considers the cross-motion and grants "all of the favorable factual inferences" to the non-movant in the cross-motion. *Hotel 71 Mezz Lender LLC v. Nat'l ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015).

**ANALYSIS**

This being a diversity action over insurance coverage, the Court "must attempt to resolve issues in the same manner as would the highest court of the state that provides the applicable law." *Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1177 (7th Cir. 2013) (quoting *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 416–17 (7th Cir. 1997)). In Illinois, which state the parties agree provides the substantive law, the interpretation of an insurance contract like the Policy is a question of law. *Title Indus. Assurance Co., R.R.G. v. First Amer. Title Ins. Co.*, 853 F.3d 876, 883 (7th Cir. 2017). The Court follows the law of the Illinois Supreme Court and, in the absence of such precedent, uses its best judgment to decide how the Illinois Supreme Court would construe the law. *Netherlands Ins. Co.*, 737 F.3d at 1177.

The duty to defend is much broader than the duty to indemnify. *Title Indus. Assurance Co.*, 853 F.3d at 883. The duty to defend arises when "the damages alleged in the underlying

4

complaint fall within or potentially within the insurance policy's coverages." *Nautilus Ins. Co. v. 1452-4 N. Milwaukee Avenue, LLC*, 562 F.3d 818, 821 (2009).[2] The Court "liberally construes the underlying complaint and the insurance policy" in favor of the insured and "gives little weight to the legal labels attached to the underlying allegations." *Title Indus. Assurance Co.*, 853 F.3d at 884. "[E]ven if the underlying complaint alleges several theories of recovery, the insurer's duty to defend arises 'even if only one such theory is within the potential coverage of the policy.'" *Id.* (quoting *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 346 (7th Cir. 2010)).

The Court operates under the presumption that the underlying complaint is Donna's fourth amended complaint, which is the operative complaint in the underlying suit and which alleges that Glen fell and hit his head while Rhody and Bachta were transporting him to the ambulance and that, after the fall, Rhody and Bachta did not properly take care of Glen or tell anyone at the dialysis center about the fall.[3] The Policy's Exclusion (D)(5), as amended by Endorsement No. 9, states that the Policy "does not apply to, and [Homeland] will not pay Loss or Defense Expenses, for any Claim based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:"

---

[2] A-Tec suggests that Homeland's duty to defend started when A-Tec first tendered Glen's demand letter. But the duty to defend arises from a complaint. *See Nautilus Ins. Co.*, 562 F.3d at 821 (the duty to defend is based on an underlying complaint); *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 847, 166 Ill. 2d 520, 211 Ill. Dec. 459 (1995) ("[B]efore [the insured] can claim that [the insurer] has breached its duty to defend, a suit must have been filed against [the insured].").

[3] The parties have not argued which of Donna's complaints is the underlying complaint for the duty to defend analysis, so the Court presumes the operative complaint will determine the duty to defend. *See Pekin Ins. Co. v. Precision Dose, Inc.*, 968 N.E.2d 664, 668–69, 2012 IL App (2d) 110195, 360 Ill. Dec. 171 (2012) (addressing the duty to defend only as to the amended complaint because the parties did not address the duty to defend the original complaint); *see also Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 147 F. Supp. 3d 708, 713 (N.D. Ill. 2015) (comparing allegations of operative complaints, which were the third amended complaints in the underlying lawsuit, with insurance policy). Nor would there be any difference in the Court's analysis because the parties agree that the facts alleged in the fourth amended complaint are the same underlying facts alleged in each prior complaint.

> Bodily Injury or Property Damage arising out of the ownership, maintenance, use, operation or entrustment to others of any aircraft, Auto or watercraft or the loading or unloading thereof. For purposes of this Exclusion (D)(5), "loading or unloading" includes, but is not limited to, the Insured's handling or placement of any individual into, onto or from any such aircraft, Auto or watercraft[.]

Doc. 44-1 § III Exclusion (D), Endorsement No. 9. The parties do not dispute that Glen fell from the stretcher during the loading of the ambulance or that the ambulance is an Auto as defined in the Policy.

Homeland argues that the injuries in the underlying complaint arise out of the loading of the ambulance and are excluded from coverage; Defendants/Counter-Plaintiffs argue that another proximate cause caused Glen's injuries and death, as alleged in the underlying complaint, and therefore there is coverage under the Policy. Under Illinois law, the facts of the complaint control coverage, with coverage found in multiple source cases if one source of injury is covered and arises separately and "wholly independent" of any source of injury that is not covered. *Northbrook Prop. and Cas. Co. v. Transp. Joint Agreement*, 741 N.E.2d 253, 254, 194 Ill. 2d 96, 251 Ill. Dec. 569 (2000) (citation omitted) (finding no duty to defend where the complaint alleged injuries that were excluded from coverage by way of exclusion for injuries arising out of use of bus and other allegations only rephrased the fact that injuries occurred from use of bus). If the other alleged sources of the injury are intertwined with an excluded liability, then there is no coverage, but if the events of an injury can be separated from the exclusion, then there is coverage because the covered source is not connected to the exclusion. *See Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 781–82 & n.22 (7th Cir. 2015) (noting difference between "dependent and independent claims" in Illinois coverage law).

Defendants/Counter-Plaintiffs argue that *Northbrook Property* does not control. Instead they champion following only the rule from Illinois' intermediary appellate court that "[i]f an occurrence is caused by a risk included within the policy, coverage is not vitiated merely because a separate excluded risk constitutes an additional cause of the occurrence." *U.S. Fid. & Guar. Co. v. State Farm Mut. Auto. Ins. Co.*, 437 N.E.2d 663, 667, 107 Ill. App. 3d 190, 63 Ill. Dec. 14 (Ill. App. Ct. 1982); *U.S. Fid. & Guar. Co. v. State Farm Mut. Auto. Ins. Co.* (*U.S. F&G II*), 504 N.E.2d 123, 125, 152 Ill. App. 3d 46, 105 Ill. Dec. 254 (1987) ("If a proximate cause of an injury is within the included coverage of an insurance policy, the included coverage is not voided merely because an additional proximate cause of the injury is a cause which is excluded under the policy."). First, *Northbrook Property* is the law of the Illinois Supreme Court and the Seventh Circuit has cited *Northbrook Property* for the proposition that "an insurance policy does not provide coverage for claims that are 'intertwined' with an excluded liability." *Westfield Ins. Co.*, 796 F.3d at 781; *Netherlands Ins. Co.*, 737 F.3d at 1178 (following "wholly independent" rule from *Northbrook Property*); *Nautilus Ins. Co.*, 562 F.3d at 822 (requiring "separate or independent compensable injury" in order for claims not to be intertwined); *see also Title Indus. Assurance Co.*, 853 F.3d at 890 (pointing out that *Northbrook Property* controls when the injury is concrete and linked to an excluded source of coverage). Second, courts have called the reasoning of Defendants/Counter-Plaintiffs' preferred legal analysis "into doubt." *See, e.g.*, *Pactiv Corp. v. Nat'l Union Fire Ins. Co.*, 179 F. Supp. 3d 803, 807 (N.D. Ill. 2015) (noting that Illinois courts question *United States Fidelity & Guaranty Company* because it relies on tort principles that clash with Illinois' use of contract principles to interpret insurance contracts). Third, *Northbrook Property* and *United States Fidelity & Guaranty Company* can be read in coordination—*Northbrook Property* excludes coverage only if sources of coverage are

7

intertwined, which suggests that *United States Fidelity & Guaranty Company* might control where sources are not intertwined but instead wholly independent. *See Westfield Ins. Co.*, 796 F.3d at 782 n.22 (harmonizing Illinois cases on insurance coverage based on "the distinction between dependent and independent claims"); *see also Transamerica Ins. Co. v. South*, 975 F.2d 321, 330 (7th Cir. 1992) ("*USF & G* must be read together with *Allstate Insurance Co. v. Pruitt ex rel. Pruitt*, 532 N.E.2d 401, 177 Ill. App. 3d 407, 126 Ill. Dec. 716 (1988), which limits the applicability of the *USF & G* principle to cases in which the two causes of injury are wholly independent of one another."). Therefore, the Court rejects Defendants/Counter-Plaintiffs' interpretation of Illinois law that *Northbrook Property* cannot apply.

Defendants/Counter-Plaintiffs argue that (1) as alleged in the underlying complaint, Rhody and Bachta failed to properly inspect Glen after the fall and failed to tell the dialysis center about his fall and that (2) these non-loading wrongs caused Glen's injuries and are wholly independent "medical" wrongs separate from Rhody and Bachta's acts that caused Glen's fall. There is no "separate or independent compensable injury" here, though, because Rhody and Bachta's alleged failings, which the underlying complaint and Defendants/Counter-Plaintiffs characterize as medical negligence, still arose from the fall and Glen's injury was directly linked to the fall.. *Nautilus Ins. Co.*, 562 F.3d at 822. The legal labels that the underlying complaint gives receive little weight. *Title Indus. Assurance* , 853 F.3d at 884. Peeling back the allegations of the underlying complaint, Donna alleges that Rhody and Bachta let Glen fall and then continued to fail him in relation to the fall until Glen's injuries grew to include death. Rhody and Bachta's "additional wrongdoing," *Netherlands Ins. Co.*, 737 F.3d at 1178, 1179, which Defendants/Counter-Plaintiffs argue are independent acts that created a new injury, are intertwined with the fall rather than severable.

Following Illinois and Seventh Circuit law, the Court finds that Glen's injuries arose from an excluded liability and are not subject to coverage because they are all intertwined with Glen's fall during the loading of the ambulance. Therefore, Homeland is entitled to a declaratory judgment that it has no duty to defend the underlying complaint and, because the duty to defend is broader than the duty to indemnify, no duty to indemnify either. *See Nautilus Ins. Co.*, 562 F.3d at 824 ("Because the duty to defend is broader" an insurer who has no duty to defend "is entitled to a declaratory judgment that it has no duty to defend or indemnify.").

## CONCLUSION

For the foregoing reasons, the Court grants Homeland's motion for summary judgment [41] and denies Defendants/Cross-Plaintiffs cross-motion for summary judgment [50]. The Court enters judgment for Homeland; issues a declaratory judgment that Homeland has no duty to defend or indemnify A-Tec, Rhody, and Bachta in the underlying action, *Lenzi v. A-Tec Ambulance, Inc. et al*, Case No. 15 L 322 (Lake County Illinois, filed Apr. 3, 2015); and terminates this case.

Dated: September 6, 2017

                                                    SARA L. ELLIS
                                                    United States District Judge